1  LAW OFFICES OF RICHARD A. LOVE
   RICHARD A. LOVE (#61944)
2  KATHLEEN M. ERSKINE (#223218)
   11601 Wilshire Boulevard, Suite 2000
3  Los Angeles, California 90025
   Telephone:    (310) 477-2070
4  Facsimile:    (310) 477-3922
   Email:  rlove@love-law.net
5          kerskine@love-law.net

6  Attorneys for Plaintiff
   SHELLEY CULLOTY

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  SHELLEY CULLOTY,                    )  CASE NO.  C08-03561 SI ADR
                                        )
12              Plaintiff,              )
                                        )  FIRST AMENDED COMPLAINT
13      vs.                             )  FOR DAMAGES FOR:
                                        )
14  UNION PACIFIC RAILROAD              )  (1)    DISCRIMINATION;
    COMPANY, a Delaware corporation,    )
15                                      )  (2)    HARASSMENT;
                Defendant.              )
16                                      )  (3)    RETALIATION;
                                        )
17                                      )  (4)    WRONGFUL TERMINATION IN
                                        )         VIOLATION OF PUBLIC POLICY
18                                      )
                                        )  DEMAND FOR JURY TRIAL
19                                      )
    _____)  Original Complaint Filed:   July 24, 2008
20

21

22

23      Plaintiff alleges:

24                              JURISDICTION

25      1.    This Court has jurisdiction over this action under:

26            a.    28  U.S.C. § 1331, since it is civil action arising under the Constitution,

27  laws, or treaties of the United States, with supplemental jurisdiction under 28 U.S.C. §1367 over

28  related state law claims;

                                        1
                          FIRST AMENDED COMPLAINT

b.      28 U.S.C. §1332(a) since it involves a controversy between citizens of different states with a value in excess of $75,000.

## VENUE AND INTRADISTRICT ASSIGNMENT

2.      The acts complained of herein against defendant(s) including the actions and omissions which impacted and affected plaintiff, and caused the damages and losses alleged herein, occurred within the Northern District of California, in several locales, more specifically set forth below, as follows:

a.      A substantial part of the events or omissions involved in plaintiff's employment related claims, as alleged herein, occurred when plaintiff worked within the Northern District of California;

b.      From October, 2007 until the time of her termination on May 20, 2008 plaintiff was assigned to and employed at the Union Pacific's Track Maintenance Department (Western Division) located in the City of Martinez, Contra Costa County, California.

## PARTIES

3.      Plaintiff Shelley Culloty ("plaintiff") is a 48 year old female who resides in Rio Vista, California. Plaintiff worked for defendant Union Pacific Railroad Company from March 17, 1997 until she was terminated on May 20, 2008.

4.      Plaintiff is informed, believes, and based thereon alleges that defendant Union Pacific Railroad Company ("Union Pacific" or "defendant"):

a.      Is a Delaware corporation with its headquarters or principal place of business in Omaha, Nebraska, and with offices throughout the State of California;

b.      By virtue of its operations and management decisions directly and regularly affects interstate commerce;

c.    Employs in excess of 15 individuals, and is an "employer" within the meaning of 29 U.S.C. §630(b), 42 U.S.C. §§2000e(b), 12111(5)(A),  and California Government Code §12926(d).

OPERATIVE FACTS

Plaintiff's Employment.

5.    Plaintiff began her employment with Union Pacific on March 17, 1997 as a  Track Laborer in the Track Maintenance Sub-Department of Union Pacific's Maintenance of Way & Structures Department.  In or about September, 1998,  plaintiff transferred to the Bridge Maintenance Sub-Department, where she worked initially as a carpenter, and then a welder, steelman, and foreman or the next 11+ years.  In October, 2007, because of the discriminatory actions taken against plaintiff as alleged *infra*, plaintiff transferred to the Track Maintenance Sub-Department, located in Martinez, California.

6.    In or about October, 2004, plaintiff was diagnosed with Hepatitis C, which was controlled with medication.  Aside from a medical leave for intensive treatment from on or around June 2, 2005 to October 19, 2005, plaintiff's medical condition did not interfere with her ability to perform her work duties and responsibilities in the Bridge Maintenance Sub-Department.

7.    Union Pacific did not and does not hire women in its maintenance of way department and sub-departments.  For the entire 11+ years of plaintiff's employment with Union Pacific, plaintiff never worked side-by-side with another female employee on a work gang, and was subjected to continuous, ongoing discrimination in the terms, conditions, rights and privileges of employment, as well as retaliation and harassment, by officers, directors and employees of Union Pacific by virtue of her status and actions as a female employee, and/or an employee over the age of 40, and/or an employee with a perceived disability.

8.     On May 20, 2008, as alleged below, plaintiff was wrongfully and illegally fired from her position of employment with Union Pacific.

9.     Plaintiff is informed, believes, and based thereon alleges the conduct and actions alleged herein by defendant, and its officers, directors, supervisors and governing individuals, constitute a continuing violation of the Federal and California laws against any form of discrimination, retaliation and/or harassment of an employee within one or more protected classes, and that the defendant's conduct is part of a systematic, intentional and/or condoned course of discriminatory conduct which is:

a.     Specifically directed against plaintiff, a female over 40 years of age whom defendant perceived to be disabled; and/or

b.     Part of a conscious pattern and/or practice of discriminating against employees over 40 years of age, female, or and/or perceived as disabled, including plaintiff.

Transfer of Russell Young to Plaintiff's Division and Department.

10.     Union Pacific organizes the Bridge Maintenance Sub-Department into work gangs of about five to eight employees, with a foreman for each work gang.  Each foreman then reports to a manager, who manages two or more work gangs, and the managers report to the Director of Bridge Maintenance for the area.

11.     Union Pacific employs Russell Young ("Young"), a Caucasian male, as a manager.  In or around April, 2005, Young transferred from a position with Union Pacific in Texas to the position of Manager of the Bridge Maintenance Sub-Department in the Western Division and became the supervisor of  work gangs, including the work gang to which plaintiff was assigned. From the time Young became the manager, until plaintiff's termination, he made her work life "a living hell".

////

////

12.     Plaintiff is informed, believes, and based thereon alleges that prior to and after Young's transfer to the Western Division, Union Pacific knew or was aware of prior complaints that Young engaged in gender and race discrimination, harassment and retaliation against Union Pacific employees.

Hepatitis C Treatment and Job Abolishment.

13.     Shortly after Young's transfer in or around April, 2005, plaintiff - a foreman - initially met with Young, and during their first discussion, among other matters, disclosed to him that she had Hepatitis C which was medically treated and controlled.  Young's only response was "I heard I had the only girl out here."

14.     After April, 2005 plaintiff requested and submitted to Union Pacific all required forms for a medical leave of absence for intensive treatment of her Hepatitis C.  Union Pacific approved the medical leave, and from June 2, 2005 until October 19, 2005 plaintiff was on her approved medical leave.  At the time of commencement of her medical leave, plaintiff had been the foreman on her work gang for approximately one year.

15.     On August 31, 2005 Young called plaintiff at home and told her if she did not fill out a leave of absence form that day, she would lose her seniority.  Plaintiff had previously filled out and submitted all required forms for the medical leave, which had been approved by Union Pacific.  Plaintiff called her union representative: she asked that Young stop harassing her while she was on medical leave; the union representative confirmed to her that all required forms for the leave had previously been submitted to Union Pacific..  Unknown to plaintiff, Young had "abolished" her job as a foreman previously on July 25, 2005, while she was on medical leave, and contrary to her union contract did not notify her of the "abolishment" at the time.

16.     On or about October 11, 2005 plaintiff spoke to Young prior to returning to work.  Young then informed plaintiff, for the first time,  that he previously had "abolished" her job

1  while on medical leave.  This required plaintiff to search and find an open position in order to

2  return to work, which she ultimately did on October 19, 2005.

3

4  Young's Threats.

5      17.    After October 19, 2005, Young continued to harass plaintiff in her work.  Among

6  other matters:

7          a.    When plaintiff returned to work on October 19, 2005, Young told a "joke"

8  to the work gang, stating: "What's worse than a coon ass with a gun?  A female CHP with a

9  gun.."  Subsequently, on or about February 14, 2006 plaintiff attended Union Pacific's Western

10  Region meetings for work gangs in Reno, Nevada.  Young asked if a co-worker (R.D. Abel) was

11  going to turn Young in for previously telling a "coon ass" joke: Young told plaintiff that the

12  regional director, Jeff Mancuso, was "backing him up"; and Young stated that if anyone  turned

13  Young in to EEO for the "joke", he would abolish their jobs, that Mancuso "stands behind me",

14  and that "I'll show R.D. [Able] who wields a bigger hammer."

15          b.    On or about February 7, 2006 plaintiff was on a conference call with

16  Young and members of all three work gangs.  Young stated there were two openings for welding

17  school in Reno, Nevada, that he had chosen plaintiff and another employee to attend welding

18  school, and then threatened plaintiff, when he stated, "Whoever does not pass welding school

19  will not have a job with Union Pacific."

20          c.     On or about July 30, 2006 one of plaintiff's crew members, R.D. Abel

21  injured his neck while working underneath a bridge.  On July 31, 2006 Young threatened

22  plaintiff's crew that if Abel turned in a claim for his injury, Young would "abolish" the jobs of

23  the entire crew, which meant that the job would be cancelled and that the crew members would

24  have to bid on other open jobs in the area.  In this instance, Young informed the crew that if their

25  jobs were abolished, the only open positions available would be in Texas.

26          d.    On or about July 31, 2006, Young told plaintiff that if she turned in any

27  more overtime claims from a bridge fire she had worked on, he and Mancuso would "abolish"

28  her job.

18.     Young continually threatened plaintiff's work crew, and specifically plaintiff,  that if any of them "made an EEO complaint" against him, that person's job would be abolished. Among these threats were:

a.     An August, 2006 statement to the entire crew - but directed at plaintiff - that if any of them made an EEO complaint against him, that person's job(s) would be abolished;

b.     On or about September 11, 2006 an employee who previously complained directly to Young concerning EEO issues was in a truck accident on the way to the job site, Young was on the phone talking about the accident, and plaintiff heard him state "If he calls EEO, I'll abolish him," and subsequently the employee was fired for allegedly lying about the injury when Young had refused to report the truck accident injury.

19.     On or about September 18, 2006 there was a pier malfunction on a Martinez subdivision in Vacaville.  While Young released and allowed the remainder of the work crew to leave, plaintiff and R.D. Abel were required to work 21 hours straight  to repair the pier malfunction.  After the work was completed, Young cut/reduced plaintiff's overtime for the job because he "didn't want double time on the books."

20.     After the September 18, 2006 overtime incident, plaintiff saw a doctor due to her stress and anxiety created by Young's treatment of her and constant threats, and was forced to take time off of work

Intentional Endangerment of Plaintiff and Her Crew.

21.      Plaintiff was extremely upset concerning Young's reduction of her September 18, 2006 overtime.  On September 21, 2006 Young had a "one-on-one" conference with plaintiff, in which:

a.     Young asked plaintiff if she thought he "threatened or harassed her;"

b.     Plaintiff replied "yes", Young did harass her and discriminate against her;

c.     Young replied "Just do it [file an EEO complaint] if you're going to do it."

7

1    He then stated she could "have his ass" (have him fired), and that he would lose his job, and that

2    he could not work with "this" hanging over his head.

3              d.    Plaintiff replied that she couldn't work with him harassing and threatening

4    her.  Young then stated "I'll back off if you back off," and stated he would go through Felix

5    Borruel, the foreman, to deal with plaintiff from that point on.  Plaintiff agreed.

6

7          22.    The next week, on September 28, 2006 plaintiff's crew was scheduled to repair a

8    section of track near Gilroy, California (the "Gilroy repair").  Among other matters, this work

9    required a hole to be dug within the "live" tracks in an area close to a double blind curve in the

10   tracks, with no safe sight distance, and with three or four crew members at a time required to

11   work in the hole between the tracks.

12

13         23.    Plaintiff is informed, believes, and based thereon alleges that when work is to be

14   done on or near the railroad tracks, Union Pacific's safety policy requires the supervisor of the

15   crew to call a dispatcher in Omaha, Nebraska, to obtain "track and time" information for the

16   section of track to be repaired, in order to determine whether trains were scheduled to pass

17   through the area during the time the track was under repair by a work crew, and if so when the

18   trains were scheduled and at what speed, and to ensure that no work was being done and the

19   work crew in a position of safety at the time of scheduled trains.

20

21         24.    On September 28, 2006 plaintiff and her work crew went to the Gilroy repair

22   location.  Young was present, and directly supervised the project.  Young did not have "track and

23   time" for the repair area, but nonetheless: ordered the repair work to proceed.  Plaintiff and

24   others told Young there was not a safe distance between the second curve and the repair area for

25   the crew members  to get out of the hole in time if a train came through the work area.  Young

26   ignored their complaints, and told them to keep digging the hole.  After the work had begun,

27   Young told plaintiff she was to be the "lookout" for trains, which made her responsible for the

28   safety of the crew; and then went to his truck which was parked nearby, watching the crew work

1   and talking on his cell phone.

2

3       25.     Within four or five  minutes after Young assigned plaintiff as the "lookout", and

4   without warning, a train came around the blind curves: plaintiff screamed a warning ("hot rail"),

5   the crew members had to scramble for their lives to get out of the hole, and plaintiff did not know

6   until after the train had passed whether her fellow crew members were alive or dead.

7

8       26.     On September 29, 2006 plaintiff called Jeff Mancuso, the Union Pacific Western

9   Region Director of Bridge Maintenance, and Young's supervisor, and reported the near-death

10  incident of the prior day.  After she related the incident, Mancuso simply replied, "What do you

11  want me to do about it?" and ended the conversation.

12

13      27.     Plaintiff is informed, believes and based thereon alleges that a few days after the

14  Gilroy incident in 2006, Young had been "written up" for safety violations by the Federal

15  Railroad Administration, including lack of "track and time" and not having a "Form B" for

16  planned work), but was not disciplined for the violations.  On or about October 3, 2006 Young

17  was at plaintiff's work site, and bragged to plaintiff and others that he had just inspected and

18  could "set up" [for discipline or termination] another work gang (the "steel gang").

19

20      28.     In or about February, 2007 Young stated to Union Pacific employees that plaintiff

21  "had a lawsuit [for gender discrimination]" against him.  Subsequently, Young hired three more

22  welders for plaintiff's work crew, all with less seniority than plaintiff, split the work crew in half,

23  and scheduled the junior work crew closer to their home base, with overtime available, while

24  scheduling plaintiff and the remainder of the crew for the jobs further away from her home base,

25  without overtime.

26

27      29.     On March 22, 2007 plaintiff complained to, and argued with, Young, about his

28  practice of scheduling jobs with overtime requirements with men who had less seniority than her,

1    and precluding her from getting any overtime pay.  During the ensuing conversation, Young then

2    stated to plaintiff "Why don't you just call the fucking EEO?"  Plaintiff was extremely upset and

3    distraught from the outburst, had chest pains and pressure in her head, tried unsuccessfully to

4    make a doctor appointment the next day.  Plaintiff ultimately was able to make a doctor

5    appointment for Monday, March 26, 2007.

6

7        30.    On March 26, 2007 plaintiff had to leave work early to go to her doctor

8    appointment, which was at 11:45 a.m..  When plaintiff was leaving, she  told Young that she was

9    "stressed out" and that her head hurt.  Her doctor diagnosed mild vertigo and pulled muscles in

10   her chest, noted she was under tremendous stress, and filled out for plaintiff a written "return to

11   work" form which cleared plaintiff to return to work.  On her way home from the doctor

12   appointment, plaintiff called Young, provided him with a full report of the doctor visit and the

13   fact she was cleared to work, and Young told her to show up for work the next morning.

14

15       31.    On March 27, 2007 plaintiff reported for work at Warm Springs as instructed by

16   Young.  After she had already worked nine hours, plaintiff received a three way call on her

17   personal cell phone from Young and a Union Pacific nurse.  Young claimed he did not know if

18   plaintiff "had a heart attack or was about to have one", to which plaintiff noted it was "funny"

19   that he had never previously asked her that question or how her health was, and stated that her

20   medical condition did not appear to be what the call was about.  The nurse stated plaintiff would

21   be off work "for medical" and that a Union Pacific form would be faxed to her doctor.  Plaintiff

22   replied she already had a written release from her doctor to return to work, but was ignored and

23   the release not requested by Young or the nurse, who demanded a Union Pacific release form.

24

25       32.    After she was sent home on March 27, 2007, plaintiff called her union EEO

26   representative, and made a verbal complaint of discrimination and harassment by Young and

27   Union Pacific, and particularly complained of the job threats, job safety issues, lack of toilet

28   facilities for women, and disparate job assignments and pay.

33.     Plaintiff again made an appointment and obtained a medical return to work authorization by her doctor, who filled out several return to work authorization forms.  On April 3, 2007 she submitted the medical authorization(s) on the Union Pacific "return to work" form to Young, yet was kept off work without pay or explanation for another eight days.  Based upon her knowledge and experience, plaintiff is informed and believes that Union Pacific does not require male employees to provide any similar medical certification after leaving work for a doctor appointment.

34.     On April 11, 2007 plaintiff received a telephone call from Young that she was "cleared" to return to work.  Plaintiff returned to work on April 12, 2007, when Mancuso pulled her aside and stated he had a list of "EEO Complaints" he needed to go over with plaintiff, and stated: plaintiff could take the truck and go whenever she needed to use the bathroom; since the track procedures were "in progress" on the date of the Gilroy incident, that was all he needed to know; the manner in which Young had pulled her out of work on March 27, 2007 was "proper".

35.     Previously, plaintiff had been the target of recurring, unwanted sexual advances by male Union Pacific employees.  On May 31, 2007 plaintiff arrived at the Stockton yard at 6:00 a.m. for work.  Prior to 7:00 a.m. she went into the only restroom in the facility.  As she was coming out of the stall, another worker (who had previously made sexual advances towards plaintiff) came in, shut the door behind him, and stated "How about you and me right now?"  Plaintiff angrily refused, he again repeated the advance, and plaintiff was then able to force her way around him and get out of the women's restroom.

36.     Plaintiff did not immediately report the sexual advance to Young due to her strained relationship with him from the prior incidents.  On June 4, 2007 plaintiff did report the May 31, 2007 incident to Young, who stated "Now that you have reported it I'm obligated to do something about it."  Plaintiff was subsequently called in to Young's office on June 14, 2007 and gave her statement on the incident.

First Formal Charge of Discrimination and Retaliation:

37.     On June 12, 2007 plaintiff went to the California Department of Fair Employment and Housing ("DFEH") to make a complaint of the discriminatory and harassing conduct, was referred to and initially interviewed by the Equal Employment Opportunity Commission ("EEOC"), and on July 6, 2007 plaintiff filed an initial formal charge of discrimination - harassment based upon gender by Young based upon the March 27, 2007 incident in which she was taken off of work.

    a.     The EEOC cross-filed the discrimination complaint with the California Department of Fair Employment and Housing ("DFEH") under claim number.# E200708E0062-00-sb, and on July 30, 3007 plaintiff received a "right to sue" letter from the DFEH;

    b.     The EEOC investigated the matter and issued its Notice of Right to Sue to plaintiff.

Retaliation for Charges of Discrimination.

38.     Schedule Change.  On or about July 9, 2007, and after plaintiff had filed her initial complaints with the EEOC and DFEH, the work gangs of plaintiff and her co-workers were abolished: the co-workers blamed plaintiff's discrimination and harassment complaints with the EEOC and DFEH for the job abolishment, and for the fact that everyone was put on "5-8's" (five days per week, eight hours per day) instead of "4-10's (four days per week, ten hours per day).

39.     On or about July 20, 2007 Union Pacific "cancelled" all work gang 8014 bulletins, with all positions in the work gang to be 're-bid' with new positions and job descriptions.

40.     Discipline for Alleged "Safety Violation".  As a matter of policy, male Union Pacific employees were allowed to bend or relax safety rules, such as the wearing of proper clothing, hard hats, proper shoes, and other safety equipment, without comment or discipline.

////

////

41.    On October 9, 2007 plaintiff and her work crew were assigned to cut with chainsaws the creosote coated wooden posts under and over a bridge, and remove the cut posts Creosote is harmful to skin with prolonged exposure.  After plaintiff had worked for seven hours straight on the job, the creosote soaked chips and sawdust caused by the chainsaws covered plaintiff, and were in her shirt, brassiere, and coveralls.  During a rest break, and in a safe area away from the work site, plaintiff removed her vest, hard hat, harness, and goggles, in order to remove or brush-off the creosote particles as best she could.  The equipment removal lasted only a few minutes.  As plaintiff was removing the creosote particles, Young drove up to the work site.  He then had a "one-on-one" conversation each member of the crew.  When Young spoke with plaintiff: nothing was said to plaintiff or noted in the "one-on-one report" any assertion or claim that she had  removed protective gear or clothing in violation of or any alleged rule or safety policy.  Subsequently, Young retaliated against plaintiff:

a.    On October 15, 2007 Young again came to the site where plaintiff's crew was working, and asked plaintiff for  "her side" of an alleged equipment/overall removal "incident" on October 9, 2007, which Young had not mentioned prior to October 15, 2007;

b.    On October 16, 2007 Young again came to plaintiff's job site, and asked plaintiff to sign a statement admitting to a "Level 3" disciplinary violation - which has a penalty of  one week suspension without pay - to the alleged overall/protective gear "incident" on October 9, 2007.  Plaintiff refused to agree to the disciplinary violation or sign the form, since she had not violated any rules;

c.    On October 23, 2007 Young and a Union Pacific manager from Oregon visited the work site of plaintiff's crew, at which time male employees were without their hard hats, or were untethered, all without being "written up" or otherwise disciplined.

d.    Shortly after Young and the other manager left the work site on October 23, 2007, plaintiff and her crew were informed that a co-worker had been killed that date at a work site near Martinez, California.  Plaintiff telephoned Union Pacific's EEO department, reported that Young had been present when unreported safety violations had occurred, related that she had been harassed and retaliated against, and now a co-worker had been killed because

13

1  the bridge department was unsafe.  Plaintiff received no formal response or informal

2  communication in response to her EEO complaint to Union Pacific.

3

4      42.     On or about October 31, 2007, and because of the discrimination, harassment and

5  retaliation in the Bridge Sub-Department, including Young's conduct, and the unsafe conditions

6  which were allowed to exist, plaintiff transferred to a welding job with the Transportation

7  District, which among other matters resulted in a loss in base pay of  about $1,600 per month.

8

9      43.     Plaintiff is informed, believes and based thereon alleges that the attempt to coerce

10 an agreement admitting to a non-existent disciplinary violation, and the disciplinary violation

11 imposed, were in retaliation for plaintiff making complaints, both to the union and DFEH/EEOC

12 concerning discrimination and harassment against her based upon her gender/sex, and retaliation

13 against her for complaining about such gender based conduct, in that:

14      a.     Male employees who violated or did not meet safety or equipment

15 standards were not charged with disciplinary violations or in any manner disciplined during the

16 same time frame from October 9-23, 2007;

17      b.     On or about October 23, 2007 plaintiff's told plaintiff that the reason for

18 the proposed discipline was that Young was retaliating against plaintiff.

19

20      44.     On November 26, 2007, the Company imposed a five-day suspension, without

21 pay, on plaintiff for the alleged safety violation on October 9, 2007.

22

23 Second Charge of Discrimination and Retaliation.

24      45.     On January 30, 2008 plaintiff filed a second Charge of Discrimination with the

25 EEOC as Case No. 550-2008-00359 in which plaintiff complained of the disparate treatment on

26 the basis of her sex and the retaliation and retaliatory acts against her through October 31, 2007

27 for the exercise of her right to file an initial Charge of Discrimination in July, 2007, and

28 subsequent internal EEO complaints directly to Union Pacific.

1          a.      After investigation, the EEOC issued its Notice of Right to Sue to plaintiff

2  for Case No. 550-2008-00359 on June 3, 2008.

3          b.      The EEOC cross-filed the charges with the DFEH, which issued its right

4  to sue letter for Case No. 550-2008-00359 on or about February 4, 2008.

5

6      46.    In February, 2008, Union Pacific sought to discipline one of plaintiff's co-

7  workers, R.D. Abel, for allegedly falsifying the injury report for the injuries he received on July

8  30, 2006.  The day afer those injuries to Abel, Young had threatened plaintiff and the entire crew

9  that if Abel filed an injury report, the jobs of everyone on the crew would be "abolished."

10

11      47.    On April 11, 2008 plaintiff was called as a witness in disciplinary hearings

12  brought against Abel for reporting the injury.  Plaintiff testified truthfully concerning Abel's July

13  30, 2006 injury.  While at the Roseville facility that date, plaintiff observed two "bullet holes"

14  drawn on the sign for the women's bathroom.  On April 15, 2008 plaintiff called Union Pacific's

15  EEO department, and complained about the "bullet hole" drawings.

16

17      48.     On April 22, 2008, Union Pacific placed plaintiff on indefinite suspension,

18  without pay, pending a disciplinary hearing, and stated to plaintiff she was under investigation

19  for allegedly providing "dishonest testimony" in the Abel proceedings on April 11, 2008.

20

21      49.    On May 1, 2008, Union Pacific  held a disciplinary hearing on the allegations that

22  plaintiff provided dishonest testimony at the April 11, 2008 Abel hearing.  Testimony at the

23  hearing demonstrated the following:

24          a.      The evidence was in conflict regarding whether, in his investigation,

25  Mancuso asked employees present on the date of Young's threats the questions he claimed to

26  have asked, and what their answers were;

27          b.      Some of the employees whom Mancuso alleged had contradicted

28  plaintiff's  testimony of Abel's injury actually testified they had no recollection of those events;

1        c.     Mancuso never spoke to Young to challenge his testimony or recollection,

2 or otherwise determine whether Young's testimony at the April 11, 2008 hearing was false;

3        d.     Mancuso never spoke to plaintiff in conducting his "investigation" into her

4 allegedly  dishonest testimony;

5        e.     Mancuso never spoke to Abel, whose testimony and recollection of the

6 events in question were consistent with that of plaintiff;

7        f.     Young had previously lied at the prior hearing concerning his knowledge

8 of R.D. Abel's injury;

9        g.     Mancuso lied at the hearing concerning the number of questions asked of

10 the workers during the investigation.

11

12     50.     On May 19, 2008 two representatives of Union Pacific  interviewed plaintiff as

13 part of an alleged investigation of the "bullet hole/sign" report of April 15, 2008, but later stated

14 there was no EEO violation

15

16     51.     On May 20, 2008, Union Pacific terminated plaintiff's employment  The stated

17 ground for her termination was a violation of Company Rule 1.6 (Conduct) in allegedly

18 providing dishonest testimony at the April 11, 2008 hearing.  These stated reasons for plaintiff's

19 termination are false and pretextual, with Union Pacific's true intent being to discriminate, harass

20 and retaliate against plaintiff for, among other matters, complaining about:

21        a.     The hostile work environment, harassing conduct and retaliation by Young

22 throughout the time after he became her supervisor, with the conduct directed towards plaintiff

23 by virtue of her gender;

24        b.     The lack of bathrooms for women on most of the job sites;

25        c.     Young's "jokes" which were demeaning to women;

26        d.     Young's constant threats that plaintiff's job would be "abolished" if she

27 made an EEO complaint against him because of his discriminatory and harassing conduct;

28        e.     The disparate treatment, both on the job site and in discipline, imposed

1    against plaintiff - the only female under Young's supervision -  as compared to male employees;

2            f.        Young's constant threats that the job of plaintiff or other crew members

3    would be abolished if Young's safety violations  were reported to Union Pacific.

4

5    <u>Third Charge of Discrimination</u>.

6            52.        On or about June 11, 2008 plaintiff filed a complaint with the DFEH as Case

7    # E-200708-A-1205-00-apsc for, among other matters, the discrimination and harassment,  and

8    retaliation for asserting protected rights, culminating in  Union Pacific's May 20, 2008

9    termination of plaintiff due to plaintiff's gender, age, and perception of physical disability.  On

10   June 16, 2008 the DFEH  issued to plaintiff its right to sue notification for Claim #E200708A-

11   1205-00-apsc;

12

13           53.        On or about June 11, 2008 plaintiff filed a complaint with the EEOC as Claim

14   #550-2008-01601.  On August 7, 2008, the EEOC issued its right to sue notification for Claim

15   #550-2008-01601.

16   .

17                         <u>FIRST CLAIM FOR RELIEF</u>

18              (Gender Discrimination under Title VII [42 U.S.C. §2000e-2]

19                             against Defendant Union Pacific)

20           54.        Plaintiff refers to the allegations of paragraphs 1 through 53, inclusive, of this

21   Complaint, and by such reference incorporates them herein as if fully set forth at length.

22

23           55.        In undertaking the foregoing acts, defendant Union Pacific discriminated against

24   plaintiff based upon her gender with respect to the compensation, terms, conditions, and/or

25   privileges of her employment.

26   ////

27   ////

28   ////

56.     Plaintiff is informed, believes, and based thereon alleges that defendant's discrimination in the terms, conditions and privileges of employment as alleged herein was intentional, and motivated in whole or in part by the fact that plaintiff is a female.

57.     As a direct and proximate result of the alleged conduct by defendant, plaintiff has suffered, and continues to suffer, extreme and severe emotional and physical distress, including, but not limited to, pain, grief, shame, humiliation, embarrassment, anger, disappointment, depression, sleeplessness, anxiety, damage to reputation, and worry, all to her damage in a sum according to proof.

58.     That as a further proximate result of said actions, plaintiff suffered special damages, including but not limited to past and future loss of earnings, and past and future medical, psychological and/or psychiatric bills, and hospital or other healthcare bills, and for which she seeks compensatory damages against the defendant, all in a sum according to proof.

59.     In doing the things alleged herein, defendant Union Pacific acted willfully, intentionally, with malice, fraud, and /or oppression, and/or directed, ratified or condoned the acts of its officers, directors, supervisors and/or employees, thereby subjecting plaintiff to cruel and unjust hardship in conscious and willful disregard for plaintiff's rights and defendant's obligations under the law, thereby entitling plaintiff to an award of exemplary or punitive damages against defendant, all in a sum according to proof.

60.     As a further proximate result of defendant's conduct, plaintiff has been required to retain counsel to prosecute this action, the reasonable attorney fees for which are sought pursuant to 42 U.S.C. §§2000e-5(k), according to proof.

////

////

////

FIRST AMENDED COMPLAINT

SECOND CLAIM FOR RELIEF

(Hostile Work Environment - Gender - under Title VII [42 U.S.C. §2000e-2]

against Defendant Union Pacific)

61.    Plaintiff refers to the allegations of paragraphs 1 through 53, inclusive, of this Complaint, and by such reference incorporates them herein as if fully set forth at length.

62.    The acts of defendant Union Pacific, and Young, as set forth above, which were directed towards plaintiff, a female, were more abusive, worse, more frequent and more threatening than the manner in which male employees were treated, thereby creating and maintaining a hostile work environment for plaintiff based in whole or in part on her gender.

63.    The conduct of defendant Union Pacific, and Young, as alleged herein was unwelcome to and unwanted by plaintiff.

64.    The hostile work environment created and maintained by defendant was so severe or pervasive as to alter the conditions of plaintiff's employment to her detriment, and create an abusive and hostile working environment, as perceived both by plaintiff and any reasonable female in similar circumstances.

65.    Plaintiff is informed, believes, and based thereon alleges that defendant's discrimination in the terms, conditions and privileges of employment as alleged herein was intentional, and motivated in whole or in part by the fact that plaintiff is a female.

66.    As a direct and proximate result of the alleged conduct by defendant,  plaintiff has suffered, and continues to suffer, extreme and severe emotional and physical distress, including, but not limited to, pain, grief, shame, humiliation, embarrassment, anger, disappointment, depression, sleeplessness, anxiety, damage to reputation, and worry, all to her damage in a sum according to proof.

1

2    67.    That as a further proximate result of said actions, plaintiff suffered special

3    damages, including but not limited to past and future loss of earnings, and past and future

4    medical, psychological and/or psychiatric bills, and hospital or other healthcare  bills, and for

5    which she seeks compensatory damages against the defendant, all in a sum according to proof.

6

7    68.    In doing the things alleged herein, defendant Union Pacific acted willfully,

8    intentionally, with malice, fraud, and /or oppression, and/or directed, ratified or condoned the

9    acts of its officers, directors, supervisors and/or employees, thereby subjecting plaintiff to cruel

10    and unjust hardship in conscious and willful disregard for plaintiff's rights and defendant's

11    obligations under the law, thereby entitling plaintiff to an award of exemplary or punitive

12    damages against defendant, all in a sum according to proof.

13

14    69.    As a further proximate result of defendant's conduct, plaintiff has been required to

15    retain counsel to prosecute this action, the reasonable attorney fees for which are sought pursuant

16    to 42 U.S.C. §§2000e-5(k), according to proof.

17

18                              THIRD CLAIM FOR RELIEF

19          (Retaliation for Asserting Rights Under Title VII  [42 U.S.C. §2000e-3]

20                              against Defendant Union Pacific)

21    70.    Plaintiff refers to the allegations of paragraphs 1 through 53, inclusive, of this

22    Complaint, and by such reference incorporates them herein as if fully set forth at length..

23

24    71.    Plaintiff opposed Union Pacific's unlawful employment practices, and made

25    informal complaints and formal charges directly to defendant United Pacific, and to the EEOC

26    and DFEH which notified Union Pacific of the complaints, concerning the discriminatory

27    conduct towards her based upon her gender, and the hostile work environment caused and

28    engendered by Young and other Union Pacific employees.  These complaints and charges of

discrimination and harassment (collectively the "EEO Charges") which included, but were not limited to:

a.    On September 21, 2006 plaintiff informed Young that he harassed her and discriminated against her;

b.    On March 27, 2007, plaintiff called her union EEO representative, and made a verbal complaint of discrimination and harassment by Young;

c.    On June 4, 2007 plaintiff made a complaint to Young concerning the May 31, 2007 sexual assault;

d.    On  June 12, 2007 plaintiff went to the California Department of Fair Employment and Housing ("DFEH") to make a complaint of the discriminatory and harassing conduct;

e.    On July 6, 2007 plaintiff was interviewed by the Equal Employment Opportunity Commission ("EEOC"), which initiated an investigation;

f.    On January 30, 2008 plaintiff filed a Charge of Discrimination with the EEOC as Case No. 550-2008-00359;

g.    On April 15, 2008 plaintiff made a telephonic complaint to Union Pacific's EEO department about the "bullet hole" drawings on the sign on the women's restroom. .

72.    Defendant's reaction to the EEO charges was to retaliate against plaintiff with the intent of punishing plaintiff, and dissuading plaintiff from making charges of discrimination or harassment, or dissuading other employees from providing evidentiary support to charges of discrimination or harassment committed by Union Pacific or its supervisors or employees against plaintiff. The defendant's acts of retaliation took several forms (collectively the "adverse actions"), including but not limited to:

a.    Threatening plaintiff throughout 2006 and 2007 that if she made an EEO complaint concerning Young's conduct, Young would "abolish" her job;

b.    On September 28, 2006 placing plaintiff in charge of the crew's safety as the "lookout"  for the Gilroy repair four minutes before the train arrived, when Young knew or

1    should have known the "track and time" information for scheduled trains, in an attempt to set up

2    a situation with which to fire plaintiff for safety violations or if any crew person was injured or

3    killed;

4            c.    In or about February, 2007 Young hired three more welders for plaintiff's

5    work crew, all with less seniority than plaintiff, split the work crew in half, and scheduled the

6    junior work crew closer to their home base, with overtime available, while scheduling plaintiff

7    for the jobs further away from her home base, without overtime, despite her seniority;

8            d.    On March 27, 2007 Young placed plaintiff off-duty for over two weeks,

9    without pay allegedly for medical reasons, even though on that date she had been cleared by her

10   doctor, in writing, to return to work on March 28, 2007, and male employees were not required to

11   obtain a medical release for attending a doctor appointment;

12           e.    On  July 9, 2007, and after plaintiff had filed her initial complaints with

13   the EEOC and DFEH, Young abolished the work gangs, and later cancelled all bulletins for

14   plaintiff's work gang 8014.  Plaintiff was blamed by her male co-workers for the abolishment

15   and the fact that everyone was put on "5-8's" (five days/week, eight hours/day) instead of "4-10's"

16   (four days/week, ten hours/day) because of her discrimination and harassment;

17           f.    After October 9, 2007 Young  instituted false and pretextual disciplinary

18   proceedings without factually basis against plaintiff for alleged "safety violations" for which

19   plaintiff was wrongly placed off of work for one week of unpaid suspension as "discipline";

20           g.    On October 31, 2007 forced plaintiff to transfer her work assignment;

21           h.    On April 22, 2008, Union Pacific placed plaintiff on indefinite suspension,

22   without pay, and ultimately terminated her employment on May 22, 2008, based upon a false,

23   pretextual charge of having provided "false" testimony given at the April 11, 2008 hearing

24   involving a disciplinary proceeding against a co-worker.

25

26       73.    Plaintiff is informed, believes, and based thereon alleges that she was subjected to

27   the adverse actions by Union Pacific and Young because of her gender.

28

FIRST AMENDED COMPLAINT

74.    As a direct and proximate result of the alleged conduct by defendant, plaintiff has suffered, and continues to suffer, extreme and severe emotional and physical distress, including, but not limited to, pain, grief, shame, humiliation, embarrassment, anger, disappointment, depression, sleeplessness, anxiety, damage to reputation, and worry, all to her damage in a sum according to proof.

75.    That as a further proximate result of said actions, plaintiff suffered special damages, including but not limited to past and future loss of earnings, and past and future medical, psychological and/or psychiatric bills, and hospital or other healthcare bills, and for which she seeks compensatory damages against the defendant, all in a sum according to proof.

76.    In doing the things alleged herein, defendant Union Pacific acted willfully, intentionally, with malice, fraud, and /or oppression, and/or directed, ratified or condoned the acts of its officers, directors, supervisors and/or employees, thereby subjecting plaintiff to cruel and unjust hardship in conscious and willful disregard for plaintiff's rights and defendant's obligations under the law, thereby entitling plaintiff to an award of exemplary or punitive damages against defendant, all in a sum according to proof.

77.    As a further proximate result of defendant's conduct, plaintiff has been required to retain counsel to prosecute this action, the reasonable attorney fees for which are sought pursuant to 42 U.S.C. §§2000e-5(k), according to proof.

FOURTH CLAIM FOR RELIEF

(Gender Discrimination [Cal. Gov. Code §12940(a)]

against Defendant Union Pacific)

78.    Plaintiff refers to the allegations of paragraphs 1 through 53, inclusive, of this Complaint, and by such reference incorporates them herein as if fully set forth at length.

79.     Prior to and until May 20, 2008 Union Pacific, and Young, and each of them, entered into a continuous course of conduct, practice, policy, and plan of harassing, and discriminating against plaintiff in compensation or in the terms, conditions, or privileges of employment with defendants based in whole or in part upon her gender/sex.  Through this practice, defendant created a hostile and offensive work environment for plaintiff through oppression, disparate treatment, and a denial of equal privileges and working conditions, as enjoyed and offered to similarly situated male employees.

80.     Defendant and Young, and each of them: approved, implemented and condoned this practice, policy, and plan; had actual and/or constructive knowledge of the aforementioned conduct; and directed, authorized and/or ratified the conduct.

81.      Plaintiff, a female, belongs to a protected class/group under the California Fair Employment and Housing Act ("FEHA"), Government Code §12900 et seq., which prohibits (i) discrimination in employment, or  in compensation, or in the terms, conditions, or privileges of employment,  and (ii) a hostile work environment, on the basis of gender or sex.

82.     During the course of her employment with defendants, plaintiff was repeatedly subjected to unwelcome and offensive discriminatory conduct because of her gender and/or sex, which included the denial of equal terms and conditions of employment, verbal abuse, and hostile work environment, as alleged herein.

83.     Plaintiff is  informed, believes, and based thereon alleges, that a motivating factor for the actions and conduct by defendant and Young, and each of them, was plaintiff's gender/sex, and that the acts of defendant and Young s were intended to (i) establish a dominant or domineering relation over plaintiff, and/or (ii) to discriminate against plaintiff, and other females, in compensation or in terms, conditions, or privileges of employment with defendants.

1      84.     Defendant's actions and conduct as alleged herein were discriminatory to plaintiff

2 based upon her gender/sex, and were intended to create, and did in fact create, a discriminatory,

3 intimidating, hostile, offensive and abusive work environment for plaintiff up to the time her

4 termination from employment as the result of defendants' conduct.

5

6      85.     As a direct and proximate result of the alleged conduct by defendant, plaintiff has

7 suffered, and continues to suffer, extreme and severe emotional and physical distress, including,

8 but not limited to, pain, grief, shame, humiliation, embarrassment, anger, disappointment,

9 depression, sleeplessness, anxiety, damage to reputation, and worry, all to her damage in a sum

10 according to proof.

11

12      86.     That as a further proximate result of said actions, plaintiff suffered special

13 damages, including but not limited to past and future loss of earnings, and past and future

14 medical, psychological and/or psychiatric bills, and hospital or other healthcare bills, and for

15 which she seeks compensatory damages against the defendant, all in a sum according to proof.

16

17      87.     In doing the things alleged herein, defendant Union Pacific acted willfully,

18 intentionally, with malice, fraud, and /or oppression, and/or directed, ratified or condoned the

19 acts of its officers, directors, supervisors and/or employees, thereby subjecting plaintiff to cruel

20 and unjust hardship in conscious and willful disregard for plaintiff's rights and defendant's

21 obligations under the law, thereby entitling plaintiff to an award of exemplary or punitive

22 damages against defendant, all in a sum according to proof.

23

24      88.     As a further proximate result of defendant's conduct, plaintiff has been required to

25 retain counsel to prosecute this action, the reasonable attorney fees for which are sought pursuant

26 to California Government Code §12965(b), according to proof.

27 ////

28 ////

FIFTH CLAIM FOR RELIEF

(Hostile Work Environment - Gender - [Cal. Gov. Code §12940(j)]

against Defendant Union Pacific)

89.    Plaintiff refers to the allegations of paragraphs 1 through 53, inclusive, of this Complaint, and by such reference incorporates them herein as if fully set forth at length.

90.    Plaintiff, a female, belongs to a protected class/group under the California Fair Employment and Housing Act ("FEHA"), Government Code §12900 et seq., which prohibits harassment based upon gender, including the prohibition of a hostile work environment based upon acts, conduct, and statements towards females.

91.    During the time period from February 14, 2005, or earlier, through March 25, 2005 defendant Union Pacific and Young, and each of them, entered into a continuous course of conduct, practice, policy, and plan of harassing plaintiff based upon her gender (female).

92.    While plaintiff worked for and with defendants, and from or about April, 2005 through May 20, 2008, defendant engaged in unwelcome, unsolicited and offensive conduct toward plaintiff, and permitted and condoned that conduct, either with express knowledge by defendants or through their failure to act upon or investigate information known to them and their agents, supervisors, and officers.  Through this practice, defendant created a hostile and offensive work environment for plaintiff through severe and pervasive oppression, threats, express and implied threats of retaliation and disparate treatment, all of which unreasonably interfered with plaintiff's work performance, and/or created an intimidating, hostile and/or offensive working environment.

93.    Plaintiff is informed, believes, and based thereon alleges that plaintiff's status as a female was a motivating factor for defendant's conduct.

94.     Defendant Union Pacific and Young, and each of them, implemented this practice, policy, and plan, all of which caused plaintiff to constantly fear she was in imminent danger of termination due to the verbal harassment and abuse to which she was subjected.

95.     As a direct result of defendant's conduct as alleged herein, plaintiff's working conditions deteriorated, making it increasingly difficult for plaintiff to perform her employment tasks, and causing plaintiff severe emotional distress, physical illness, and preventing plaintiff from performing her job responsibilities, all as set forth herein.

96.     Defendants' actions and conduct as alleged herein constitute unlawful and discriminatory practices in violation of the California Fair Employment and Housing Act, Government Code §§12900 et seq., and Article 1, §8 of the California Constitution, including, but not limited to unlawful harassment based upon gender by defendant of plaintiff in violation of Government Code §12940(j).

97.     Plaintiff is informed, believes, and based thereon alleges that Young was  an aider, abettor, agent and/or supervisor of defendant Union Pacific, within the meaning of Government Code §12940(i)(j)(1), which renders defendant Union Pacific strictly liable for Young's discriminatory and sexually harassing acts and conduct as alleged herein.

98.     As a direct and proximate result of the alleged conduct by defendant, plaintiff has suffered, and continues to suffer, extreme and severe emotional and physical distress, including, but not limited to, pain, grief, shame, humiliation, embarrassment, anger, disappointment, depression, sleeplessness, anxiety, damage to reputation, and worry, all to her damage in a sum according to proof.

99.     That as a further proximate result of said actions, plaintiff suffered special damages, including but not limited to past and future loss of earnings, and past and future

1  medical, psychological and/or psychiatric bills, and hospital or other healthcare bills, and for

2  which she seeks compensatory damages against the defendant, all in a sum according to proof.

3

4      100.    In doing the things alleged herein, defendant Union Pacific acted willfully,

5  intentionally, with malice, fraud, and /or oppression, and/or directed, ratified or condoned the

6  acts of its officers, directors, supervisors and/or employees, thereby subjecting plaintiff to cruel

7  and unjust hardship in conscious and willful disregard for plaintiff's rights and defendant's

8  obligations under the law, thereby entitling plaintiff to an award of exemplary or punitive

9  damages against defendant, all in a sum according to proof.

10

11     101.    As a further proximate result of defendant's conduct, plaintiff has been required to

12  retain counsel to prosecute this action, the reasonable attorney fees for which are sought pursuant

13  to California Government Code §12965(b), according to proof.

14

15                          SIXTH CLAIM FOR RELIEF

16            (Discrimination based upon Age [Cal. Gov. Code §12940(a)]

17                        against Defendant Union Pacific)

18     102.    Plaintiff refers to the allegations of paragraphs 1 through 53, inclusive, of this

19  Complaint, and by such reference incorporates them herein as if fully set forth at length.

20

21     103.    Defendant  took the adverse actions against plaintiff, as set forth above.

22

23     104.    Plaintiff was over forty (40) years of age at the time of the adverse actions.

24

25     105.    Plaintiff was qualified for her position of employment, and had satisfactorily

26  performed her position as welder for Union Pacific for over 11years.

27  ////

28  ////

FIRST AMENDED COMPLAINT

1    106.    Plaintiff is informed, believes, and based thereon alleges that plaintiff's age was

2    the sole or motivating factor for the adverse employment actions towards her.

3

4    107.    As a direct and proximate result of the alleged conduct by defendant, plaintiff has

5    suffered, and continues to suffer, extreme and severe emotional and physical distress, including,

6    but not limited to, pain, grief, shame, humiliation, embarrassment, anger, disappointment,

7    depression, sleeplessness, anxiety, damage to reputation, and worry, all to her damage

8

9    108.    That as a further proximate result of said actions, plaintiff suffered special

10   damages, including but not limited to past and future loss of earnings, and past and future

11   medical, psychological and/or psychiatric bills, and hospital or other healthcare  bills, and for

12   which she seeks compensatory damages against the defendant, all in a sum according to proof.

13

14   109.    In doing the things alleged herein, defendant Union Pacific acted willfully,

15   intentionally, with malice, fraud, and /or oppression, and/or directed, ratified or condoned the

16   acts of its officers, directors, supervisors and/or employees, thereby subjecting plaintiff to cruel

17   and unjust hardship in conscious and willful disregard for plaintiff's rights and defendant's

18   obligations under the law, thereby entitling plaintiff to an award of exemplary or punitive

19   damages against defendant, all in a sum according to proof.

20

21   110.    As a further proximate result of defendant's conduct, plaintiff has been required to

22   retain counsel to prosecute this action, the reasonable attorney fees for which are sought pursuant

23   to California Government Code §12965(b), according to proof.

24

25                              SEVENTH CLAIM FOR RELIEF

26                        (Disability Discrimination: Disparate Treatment

27        [Cal. Gov. Code §§12926(j)(k), 12926.1, 12940(a)] against Defendant Union Pacific)

28   111.    Plaintiff refers to the allegations of paragraphs 1 through 53, inclusive, of this

Complaint, and by such reference incorporates them herein as if fully set forth at length.

112.    At all times relevant plaintiff suffered from a physical disability within the meaning of California Government Code §12926(k) (the "physical disability"), in that:

a.    Plaintiff suffered from one or more physiological disorder(s) or condition(s), including Hepatitis C;

b.    Plaintiff had a record or history of the physiological disorder(s) or condition(s) described in subsection (a), above, which was known to defendant;

c.    Plaintiff was regarded, treated and/or perceived by defendant as having, or having had, a physical condition which made difficult her ability to comprehend, concentrate, interact with others, and/or work;

d.    Plaintiff was regarded, treated and/or perceived by the defendant as having, or having had, a physical condition that had no present disabling effect but which may in the future make difficult her ability to comprehend, concentrate, interact with others, /or work.

113.    At all times relevant plaintiff suffered from a mental disability within the meaning of California Government Code §12926(j), in that:

a.    Plaintiff suffered from one or more mental or psychological disorders and/or emotional or mental illness resulting in depression, stress, anxiety, or other condition which  made the achievement of major life activities difficult, including but not limited to her ability to comprehend, concentrate, interact with others, and/or work;

b.    Plaintiff had a record or history of the mental disorder(s) or condition(s) described in subsection (a), above, which was known to defendant;

c.    Plaintiff was regarded, treated and/or perceived by defendant as having, or having had, a mental condition which made difficult her ability to comprehend, concentrate, interact with others, and/or work;

d.    Plaintiff was regarded, treated and/or perceived by defendant as having, or having had, a mental condition that had no present disabling effect but which may in the future make difficult her ability to comprehend, concentrate, interact with others, and/or work.

114.    Plaintiff is informed, believes, and based thereon alleges that at the time of plaintiff's employment and/or termination defendant knew, or in the exercise of reasonable care should have known:

   a. Plaintiff had one or more physical and/or mental disabilities (collectively the "disabilities") as set forth above, from which she was recovering or attempting to recover;

   b. Plaintiff's disabilities would not prevent or impair plaintiff's performance of her normal and customary job duties which she had done for years, and which she was qualified to perform by virtue of her experience and prior job duties with defendant, with or without reasonable accommodation(s);

   c. Defendant had, and continued to have, a need for a person of plaintiff's job skills and abilities.

115.    Plaintiff is informed, believes and based thereon alleges that with respect to plaintiff's period of physical disability, mental disability, and/or at the time of her termination, defendant materially discriminated against plaintiff, in that defendant:

   a. Discriminated against plaintiff in the terms, conditions and/or privileges of employment in the form of the adverse employment actions, as set forth above;

   b. Terminated plaintiff in whole or in substantial part because of her disability(ies), or due to the perception plaintiff suffered from, or would in the future suffer from, such disability(ies); and/or,

   c. Violated and breached defendant's pattern, practice and/or policy, as actually applied and implemented by defendant, of accommodating injured workers with such disability(ies); and/or

   d. Replaced plaintiff with a younger and/or lower paid worker, employee, or independent contractor without an actual or perceived disability; and/or

   e. Distributed plaintiff's job duties to a younger and/or lower paid employee without an actual or perceived disability; and/or,

   f. Had, and continued to have, a need for a person of plaintiff's job skills and

1  abilities at the time of her termination, and thereafter.

2

3      116.    Plaintiff is informed, believes, and based thereon alleges that the disabilities of

4  plaintiff, as alleged herein, were a substantial cause and/or motivating reason for the adverse

5  employment actions by defendant, as set forth above, including the termination of plaintiff's

6  employment.

7      117.    The conduct of defendant alleged herein constitutes discrimination based upon

8  physical disability and/or mental disability, an unlawful employment practice in violation of the

9  California Fair Employment and Housing Act, California Government Code §§12926(j)(k),

10  12926.1, 12940(a) which was a substantial factor in injury and damage to plaintiff.

11

12      118.    As a direct and proximate result of the conduct by defendant, plaintiff has

13  suffered, and continues to suffer, extreme and severe emotional and physical distress, including,

14  but not limited to, pain, grief, shame, humiliation, embarrassment, anger, disappointment,

15  depression, sleeplessness, anxiety, damage to reputation, and worry, all to her damage in a sum

16  according to proof.

17

18      119.    That as a further proximate result of said actions, plaintiff suffered special

19  damages, including but not limited to past and future loss of earnings, and past and future

20  medical, psychological and/or psychiatric bills, and hospital or other healthcare  bills, and for

21  which she seeks compensatory damages against the defendant, all in a sum according to proof.

22

23      120.    In doing the things alleged herein, defendant Union Pacific acted willfully,

24  intentionally, with malice, fraud, and /or oppression, and/or directed, ratified or condoned the

25  acts of its officers, directors, supervisors and/or employees, thereby subjecting plaintiff to cruel

26  and unjust hardship in conscious and willful disregard for plaintiff's rights and defendant's

27  obligations under the law, thereby entitling plaintiff to an award of exemplary or punitive

28  damages against defendant, all in a sum according to proof.

1

2      121.    As a further proximate result of defendant's conduct, for this action plaintiff has

3   been required to retain counsel, the reasonable attorney fees for which are sought pursuant to

4   California Government Code §12965(b), according to proof.

5

6                              EIGHTH CLAIM FOR RELIEF

7          (Retaliation for Asserting Rights Against or Opposing Discrimination and/or

8            Harassment [Cal. Gov. Code §12940(h)] against Defendant Union Pacific)

9      122.    Plaintiff refers to the allegations of paragraphs 1 through 53, inclusive, of this

10  Complaint, and by such reference incorporates them herein as if fully set forth at length.

11

12     123.    Plaintiff is informed, believes, and based thereon alleges the acts and conduct of

13  defendant and Young, as set forth above, were because plaintiff opposed the acts, conduct and

14  practices constituting illegal discrimination, and because plaintiff filed a complaint of the

15  conduct constituting discrimination and harassment with defendants.

16

17     124.    Defendants' actions and conduct as alleged herein constitute unlawful and

18  discriminatory practices in violation of the California Fair Employment and Housing Act,

19  Government Code §§12900 et seq., and Article 1, §8 of the California Constitution, including,

20  but not limited to unlawful retaliation  in violation of Government Code §12940(h).

21

22     125.    As a direct and proximate result of the alleged conduct by defendant, plaintiff has

23  suffered, and continues to suffer, extreme and severe emotional and physical distress, including,

24  but not limited to, pain, grief, shame, humiliation, embarrassment, anger, disappointment,

25  depression, sleeplessness, anxiety, damage to reputation, and worry, all to her damage.

26

27     126.    That as a further proximate result of said actions, plaintiff suffered special

28  damages, including but not limited to past and future loss of earnings, and past and future

33

medical, psychological and/or psychiatric bills, and hospital or other healthcare  bills, and for

which she seeks compensatory damages against the defendant, all in a sum according to proof.

127.    In doing the things alleged herein, defendant Union Pacific acted willfully,

intentionally, with malice, fraud, and /or oppression, and/or directed, ratified or condoned the

acts of its officers, directors, supervisors and/or employees, thereby subjecting plaintiff to cruel

and unjust hardship in conscious and willful disregard for plaintiff's rights and defendant's

obligations under the law, thereby entitling plaintiff to an award of exemplary or punitive

damages against defendant, all in a sum according to proof.

128.    As a further proximate result of defendant's conduct, for this action plaintiff has

been required to retain counsel, the reasonable attorney fees for which are sought pursuant to

California Government Code §12965(b), according to proof.

## NINTH CLAIM FOR RELIEF

(Wrongful Termination in Violation of Public Policy

against Defendant Union Pacific)

129.    Plaintiff refers to the allegations of paragraphs 1 through 53, inclusive, of this

Complaint, and by such reference incorporates them herein as if fully set forth at length.

130.    During plaintiff's employment with defendant Union Pacific, the foregoing acts,

omissions, practices and conduct engaged in by defendants were illegal, and subjected defendants

to civil liability, and/or violated public policy, and subjected plaintiff, who was objected to and

protested such acts, practices and conduct, to retaliation by defendants.

131.    Plaintiff is informed, believes, and based thereon alleges that the acts engaged in

by defendants, and each of them, as set forth above, and as to which plaintiff objected to and

refused to participate in or condone, and/or reported as a violation of public policy, and/or which

1  involved plaintiff performing a statutory obligation or exercising a statutory right or privilege,

2  included defendants':

3          a.      Engaging in acts which constitute: discrimination on the basis of gender,

4  age, and/or disability  in compensation, or the terms, conditions or privileges of employment;

5  hostile work environment based upon gender; retaliation for asserting the right(s) to be free from

6  discrimination, harassment and/or retaliation based upon gender, age, and/or physical disability

7  (Gov. Code §12940(a)(h)(j); 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3);

8          b.      Engaging in acts which disqualified plaintiff from pursuing a business,

9  profession, vocation or employment because of her sex or gender, age, and/or physical disability

10  (Cal. Const. Art. 1, Sec. 8);

11          c.      Engaging in acts which violate federal safety statutes and regulations for

12  safety in the repair and maintenance of railroad tracks, and defendant's own safety program, and

13  which threaten railway workplace safety for defendants employees, in general, and plaintiff and

14  plaintiff's work crews, in particular (49 U.S.C. §§20101,  20103(a); regulations found at 49

15  C.F.R. 214.1 et seq., in general, and particularly 49 C.F.R. 214.303, 214.311, 214.335, and

16  sections cited therein).

17

18          132.    Plaintiff is informed, believes, and based thereon alleges  her termination was due,

19  in whole or in part, to her refusal to condone, consent to, or participate in the acts and/or conduct

20  of defendants, as set forth above, which was and is forbidden by public policy, as expressed in

21  the foregoing statutes and/or regulations.

22

23          133.    As a direct and proximate result of the alleged conduct by defendant, plaintiff has

24  suffered, and continues to suffer, extreme and severe emotional and physical distress, including,

25  but not limited to, pain, grief, shame, humiliation, embarrassment, anger, disappointment,

26  depression, sleeplessness, anxiety, damage to reputation, and worry, all to her damage in a sum

27  according to proof.

28

134.    That as a further proximate result of said actions, plaintiff suffered special damages, including but not limited to past and future loss of earnings, and past and future medical, psychological and/or psychiatric bills, and hospital or other healthcare bills, and for which she seeks compensatory damages against the defendant, all in a sum according to proof.

135.    In doing the things alleged herein, defendant Union Pacific acted willfully, intentionally, with malice, fraud, and /or oppression, and/or directed, ratified or condoned the acts of its officers, directors, supervisors and/or employees, thereby subjecting plaintiff to cruel and unjust hardship in conscious and willful disregard for plaintiff's rights and defendant's obligations under the law, thereby entitling plaintiff to an award of exemplary or punitive damages against defendant, all in a sum according to proof.

WHEREFORE, plaintiff Shelley Culloty prays for relief against defendant Union Pacific Railroad Company as follows:

    1.    On the First Claim for Discrimination (Gender) under 42 U.S.C. §2000e-2:

        a.    For general damages, according to proof;

        b.    For special damages, including but not limited to back pay and front pay, according to proof;

        c.    For punitive damages, according to proof.

        d.    For reasonable attorney fees pursuant to 42 U.S.C. §§2000e-5(k), according to proof.

    2.    On the Second Claim for Hostile Work Environment (Gender) under 42 U.S.C. §2000e-2:

        a.    For general damages, according to proof;

        b.    For special damages, including but not limited to back pay and front pay, according to proof;

        c.    For punitive damages, according to proof.

1          d.      For reasonable attorney fees pursuant to 42 U.S.C. §§2000e-5(k),

2                  according to proof.

3

4      3.      On the Third Claim for Retaliation for asserting Title VII rights

5              under 42 U.S.C. §2000e-3:

6          a.      For general damages, according to proof;

7          b.      For special damages, including but not limited to back pay and

8                  front pay, according to proof;

9          c.      For punitive damages, according to proof.

10         d.      For reasonable attorney fees pursuant to 42 U.S.C. §§2000e-5(k),

11                 according to proof.

12

13     4.      On the First, Second, and Third Claims for violation of civil rights under

14             42 U.S.C. §2000e-1 et seq:

15         a.      For a preliminary injunction pursuant to 42 U.S.C. §2000e-5(g)

16  enjoining and restraining defendant Union Pacific from discriminating against, harassing and/or

17  retaliating against plaintiff on the basis of her gender, and ordering reinstatement of plaintiff as

18  an employee of Union Pacific,  together with all back pay owed and unpaid;

19         b.      For a permanent injunction pursuant to 42 U.S.C. §2000e-5(g)

20  enjoining and restraining defendant from discriminating against, harassing and/or retaliating

21  against plaintiff on the basis of her gender, and ordering reinstatement of plaintiff together with

22  all back pay owed and unpaid;

23         c.      For reasonable attorney fees pursuant to 42 U.S.C. §§2000e-5(k)

24  in obtaining the injunctive relief, according to proof.

25

26     5.      On the Fourth Claim for Discrimination (Gender) under California

27             Government Code §12940(a):

28         a.      For general damages, according to proof;

37

1          b.      For special damages, including but not limited to back pay and

2                   front pay, according to proof;

3          c.      For punitive damages, according to proof.

4          d.      For reasonable attorney fees pursuant to California Government

5                   Code §12965(b), according to proof.

6

7      6.      On the Fifth Claim for Hostile Work Environment (Gender) pursuant to

8            California Government Code §12940(j):

9          a.      For general damages, according to proof;

10         b.      For special damages, including but not limited to back pay and

11                 front pay, according to proof;

12         c.      For punitive damages, according to proof.

13         d.      For reasonable attorney fees pursuant to California Government

14                 Code §12965(b), according to proof.

15

16     7.      On the Sixth Claim for Discrimination (Age) pursuant to California

17         Government Code §12940(a):

18         a.      For general damages, according to proof;

19         b.      For special damages, including but not limited to back pay and

20                 front pay, according to proof;

21         c.      For punitive damages, according to proof.

22         d.      For reasonable attorney fees pursuant to California Government

23                 Code §12965(b), according to proof.

24

25     8.      On the Seventh Claim for Discrimination (Disability) pursuant to

26         California Government Code §§12926(j)(k), 12926.1, 12940(a):

27         a.      For general damages, according to proof;

28         b.      For special damages, including but not limited to back pay and

1          front pay, according to proof;

2                    c.        For punitive damages, according to proof.

3                    d.        For reasonable attorney fees pursuant to California Government

4                              Code §12965(b), according to proof.

5

6          9.        On the Eighth Claim for Retaliation pursuant to California Government

7                    Code §12940(h):

8                    a.        For general damages, according to proof;

9                    b.        For special damages, including but not limited to back pay and

10                             front pay, according to proof;

11                   c.        For punitive damages, according to proof.

12                   d.        For reasonable attorney fees pursuant to California Government

13                             Code §12965(b), according to proof.

14

15         10.       On the Ninth Claim for Wrongful Termination in Violation of Public

16                   Policy:

17                   a.        For general damages, according to proof;

18                   b.        For special damages, according to proof;

19                   c.        For punitive damages, according to proof.

20

21         11.       For pre-judgment interest;

22

23

24

25

26  ////

27  ////

28  ////

FIRST AMENDED COMPLAINT

12.    For costs of suit herein;

13.    For such other and further relief as this Court deems just and proper.

Dated: August 13, 2008                          LAW OFFICES OF RICHARD A. LOVE


By: /s/ - Kathleen M. Erskine
    Kathleen M. Erskine
    Attorneys for Plaintiff
    SHELLEY CULLOTY


DEMAND FOR JURY TRIAL

Plaintiff Shelley Culloty  hereby demands trial by jury in this case of all matters which are triable to a jury as a matter of right.

Dated: August 13, 2008                          LAW OFFICES OF RICHARD A. LOVE


By: /s/ - Kathleen M. Erskine
    Kathleen M. Erskine
    Attorneys for Plaintiff
    SHELLEY CULLOTY